**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHRISTOPHER SIRMONS, JR., Petitioner** | : | **No. 1:26-cv-02562** |
| **v.** | : | **(Judge Kane)** |
| **LINDSY KENDALL, et al., Respondents** | : | |

**MEMORANDUM**

Currently before the Court are an application for leave to proceed in forma pauperis ("IFP Application") and a petition for a writ of habeas corpus under 28 U.S.C. § 2254 filed by pro se Petitioner Christopher Sirmons, Jr. ("Sirmons"). For the reasons stated below, the Court will grant the IFP Application, dismiss Sirmons's Section 2254 habeas petition without prejudice as an unauthorized second or successive petition, decline to issue a certificate of appealability, and direct the Clerk of Court to close this case.

## I. BACKGROUND

### A. State Court Proceedings

Sirmons is currently serving a state sentence of a minimum of four years to a maximum of eight years after a jury sitting in the Court of Common Pleas of Centre County ("CCP") found him guilty of two counts of aggravated assault (18 Pa. C.S. § 2702(a)(3)) and two counts of simple assault (18 Pa. C.S. § 2701(a)(1)) in late 2015. See (Doc. No. 1 at 1); Docket, Commonwealth v. Sirmons, No. CP-14-CR-0001770-2014 (Centre Cnty. Ct. Com. Pl. filed Oct. 9, 2014) ("CCP Dkt.");[1] Commonwealth v. Sirmons, No. 261 MDA 2016, 2016 WL 5884805, at

[1] The Court takes judicial notice of the docket from Sirmons's underlying criminal cases and any related appeals, which are available on the Unified Judicial System of Pennsylvania's Web Portal (https://ujsportal.pacourts.us/CaseSearch). See Zedonis v. Lynch, 233 F. Supp. 3d 417, 422 (M.D. Pa. 2017) ("Pennsylvania's Unified Judicial System provides online access to the

*1 (Pa. Super. Ct. Sept. 9, 2016) (unpublished) ("Sirmons"). The CCP ordered that Sirmons's sentence run consecutive to a sentence he was already serving. See Sirmons, 2016 WL 5884805, at *2.[2]

The facts underlying Sirmons's convictions were as follows:

> On July 11, 2014, [Sirmons] was incarcerated at SCI-Rockview. At approximately 7:45 p.m., the inmates were in a "blackout" period, which is a recess-like time when inmates can play cards, board games, etc. Corrections Officer ("CO") Garrett Dixon was on duty performing security rounds and his normal responsibilities with respect to the care, custody, and control of inmates. CO Dixon observed [Sirmons] standing in an unauthorized area, near a divider gate that separates the Restricted Housing Unit ("RHU"). Inmates are not permitted to stand near the divider because contraband is often passed into the RHU. CO Dixon asked [Sirmons] what he was doing by the gate; [Sirmons] did not respond. CO Dixon then ordered [Sirmons] to remove the gloves he was wearing and informed [Sirmons] that CO Dixon was going to perform a pat-down due to [Sirmons]'s suspicious behavior. [Sirmons] initially argued about removing his gloves, but he eventually complied. During the pat-down, [Sirmons] became argumentative. CO Dixon completed the pat-down and found no contraband on [Sirmons]'s person.
>
> CO Dixon directed [Sirmons] to return to his cell. [Sirmons] did not comply. Instead, [Sirmons] began walking in a different direction. CO Dixon again ordered [Sirmons] to return to his cell. [Sirmons] failed to comply and laughed at the officer. At that point, CO Dixon commanded [Sirmons] to "cuff up," meaning [Sirmons] must put his hands behind his back so CO Dixon could handcuff him. [Sirmons] put his hands behind his back and while CO Dixon was reaching for handcuffs, [Sirmons] turned around and punched CO Dixon in the face with a closed fist. [Sirmons] hit CO Dixon again in the jaw. [Sirmons] continued swinging punches as CO Dixon attempted to regain control of [him].
>
> CO Daniel Sayers was on duty during the incident and observed the assault and the events leading up to it. Specifically, CO Sayers heard CO Dixon command [Sirmons] to go to his cell. When CO Dixon ordered [Sirmons] to "cuff up," CO

---

docket sheets for criminal cases, and this Court may take judicial notice of those public dockets." (citations omitted)).

[2] It appears that Sirmons was already serving a sentence of minimum of four years to a maximum of ten years following a jury trial in the Court of Common Pleas of Berks County in April 2013. See Docket, Commonwealth v. Sirmons, No. CP-06-CR-0005197-2012 (Berks Cnty. Ct. Com. Pl. filed Nov. 5, 2012); Commonwealth v. Sirmons, No. 379 MDA 2018, 2018 WL 4270149, at *1 (Pa. Super. Ct. Sept. 7, 2018) (unpublished) (describing Sirmons's Berks County conviction and sentence).

> Sayers saw [Sirmons] stand with his back toward CO Dixon and then shift as if he was ready to strike. CO Sayers then watched [Sirmons] strike CO Dixon. CO Sayers responded to the scene to aid CO Dixon in controlling [Sirmons]. When CO Sayers tried to restrain [Sirmons], [he] struck CO Sayers in the face with a closed fist. [Sirmons] got on top of CO Sayers and continued to fight with him.
>
> Lieutenant Lynn Smith was on duty during the incident and received a transmission over the radio regarding a fight, so he responded to the scene. Lieutenant Smith observed [Sirmons] on top of CO Sayers. [Sirmons] disobeyed multiple orders to put his hands behind his back. CO Kevin Falls also heard a fight occurring and saw an officer and an inmate rolling around on the ground. CO Falls responded to the scene and Lieutenant Smith directed him to secure [Sirmons], along with another officer. The officers eventually restrained [Sirmons]. Shortly thereafter, [Sirmons] said to CO Falls: "Falls, man, they got me. It was a fair fight. I deserved it, but they fucking got me." (N.T. Jury Trial, 11/6/15, at 16-17). CO Dixon was swollen and sore for a few days following the assault, had difficulty chewing and opening his mouth, and took Motrin for pain. CO Dixon also described the pain felt from [Sirmons]'s initial blow as a seven or eight on a scale from one to ten. CO Sayers was in pain for about a week following the assault.

See id. at *1.

Following his sentence, Sirmons timely filed a post-sentence motion in which he challenged one of the trial court's instructions to the jury because the trial court did not read his proposed point for charge. See id. at *2; see also (Doc. No. 1 at 2). On February 8, 2016, the CCP held a hearing on the motion, after which the CCP denied it. See Sirmons I, 2016 WL 5884805, at *2.

Two days later, on February 10, 2016, Sirmons timely filed a notice of appeal to the Pennsylvania Superior Court in which he contested the CCP's refusal to read his proposed point for charge to the jury. See id. (identifying sole issue raised on appeal as: "Did the trial court erroneously refuse to give [Sirmon]'s requested point for charge number 16, an expanded definition of 'impairment of physical condition or substantial pain?'" (use of all-caps omitted)); see also (Doc. No. 1 at 2). On September 9, 2016, the Superior Court issued an unpublished Memorandum affirming Sirmons's judgment of sentence. See Sirmons, 2016 WL 5884805, at

*1, 6. It does not appear that Sirmons sought further review with the Pennsylvania Supreme Court.

After his unsuccessful attempt to challenge his criminal judgment on direct review, Sirmons began pursuing post-conviction collateral relief by filing his first petition under Pennsylvania's Post Conviction Relief Act, 42 Pa. C.S. §§ 9541–46 ("PCRA"), on August 29, 2016, which was during the time his direct appeal was pending before the Superior Court. See CCP Dkt. The CCP appointed counsel for Sirmons and directed him to file an amended PCRA petition via an Order entered on January 6, 2017. See id. Sirmons filed an amended PCRA petition on August 14, 2017. See id.

On July 30, 2018, Sirmons's counsel filed a motion for leave to withdraw from representation and a no-merit letter pursuant to Pennsylvania v. Finley, 481 U.S. 551 (1987) and Commonwealth v. Turner, 544 A.2d 927 (Pa. 1988). Two weeks later, the CCP granted counsel's motion to withdraw and informed Sirmons of its intent to dismiss his PCRA petition without a hearing under Pennsylvania Rule of Criminal Procedure 907. See id. Sirmons filed a response in opposition to the CCP's notice of intent to dismiss on August 20, 2018. See id.

The CCP issued an Opinion and Order dismissing Sirmons's amended PCRA petition on September 21, 2018. See id. Sirmons did not file a timely notice of appeal to the Superior Court. See id. He did, however, file three notices of appeal from the dismissal of his amended PCRA petition, which were docketed in the CCP on October 17, 2019, November 4, 2019, and November 25, 2019. See id. On January 15, 2020, the Superior Court issued an Order quashing Sirmons's appeal(s) as untimely. See Docket, Commonwealth v. Sirmons, No. 1979 MDA 2019 (Pa. Super. Ct. filed Oct. 17, 2019). It does not appear that Sirmons filed a petition for allowance of appeal with the Pennsylvania Supreme Court. See CCP Dkt.

Sirmons filed a second PCRA petition, which was docketed in the CCP on March 6, 2020. See id. The CCP appointed counsel to represent Sirmons, and counsel later filed a petition for leave to withdraw as counsel along with a Turner/Finley no-merit letter on September 4, 2020. See id. On October 15, 2020, the CCP issued an Order granting counsel's motion to withdraw and notifying Sirmons of its intent to dismiss his second PCRA petition without a hearing. See id. Sirmons filed a response to the CCP's notice on October 28, 2020. See id. Then, on January 4, 2021, the CCP entered an Opinion and Order dismissing Sirmons's second PCRA petition without a hearing. See id. Sirmons did not file an appeal to the Superior Court, and there do not appear to have been any further filings in Sirmons's criminal case to date.

### B. Federal Section 2254 Habeas Proceedings Relating to Sirmons's Underlying Centre County Convictions and Sentence

#### 1. Sirmons's First Section 2254 Petition

Sirmons filed a Section 2254 petition in which he challenged his Centre County convictions and sentence, which the Clerk of Court docketed on October 2, 2017, and which was assigned to the undersigned. See Sirmons v. Kistler, No. 17-cv-01776 (M.D. Pa. filed Oct. 2, 2017), ECF No. 1. On December 8, 2017, the Court issued a Memorandum and Order dismissing without prejudice Sirmons's Section 2254 petition as unexhausted because his PCRA proceedings were still pending at the time. See id., ECF Nos. 9, 10. Sirmons did not pursue an appeal from this decision.

### 2. Sirmons's Second Section 2254 Petition

On April 10, 2019, Sirmons filed a second Section 2254 petition with this Court. See Sirmons v. Gilmore, No. 19-cv-00625 (M.D. Pa. filed Apr. 10, 2019), ECF No. 1. In this petition, Sirmons raised the following claims:

1. Constitutional protection of the Sixth, Eighth, and Thirteenth Amendment[s]. PA. Rule 513(B), PA. Rule 544(B), PA Rule 551, PA Rule 120, PA Rule 132;

2. Constitutional protection of the Fourteenth, and Seventh, and Nin[]th, and Eleventh Amendment[s]. PA Rule 542(D)(E), PA rule 508(A)(1), PA Rule 3733, PA Rule 132(A3)(B)(C), PA Rule 117;

3. Constitutional protection of the Amendments (18 PA. C.S. Section 9183); and

4. Sufficiency of the evidence.

See id., ECF No. 1 at 4–8. On August 21, 2019, the Court issued a Memorandum and Order dismissing Sirmons's second Section 2254 petition as unexhausted and procedurally defaulted. See id., ECF Nos. 4, 5; Sirmons v. Gilmore, No. 19-cv-00625, 2019 WL 3942973 (M.D. Pa. Aug. 21, 2019). Sirmons did not file an appeal with the Third Circuit Court of Appeals.

### 3. Sirmons's Third Section 2254 Petition

Sirmons filed a third Section 2254 petition, which the Clerk of Court docketed on August 29, 2019. See Sirmons v. Commw. of Pa., No. 19-cv-01502 (M.D. Pa. filed Aug. 29, 2019), ECF No. 1. On September 9, 2019, the Court issued a Memorandum and Order dismissing this petition without prejudice because it was an unauthorized second or successive habeas petition. See id., ECF Nos. 4, 5; Sirmons v. Commw. of Pa., No. 19-cv-01502, 2019 WL 4256358 (M.D. Pa. Sept. 9, 2019).

**4. Sirmons's Fourth Section 2254 Petition**

Sirmons filed a fourth Section 2254 petition and supporting memorandum of law, both of which the Clerk of Court docketed on July 10, 2026. (Doc. No. 1.) He then filed a supplement to his habeas petition, which the Clerk of Court docketed on July 13, 2026. (Doc. No. 5.)[3]

Sirmons raised the following four claims for habeas relief: (1) "insufficient, inadmissible evidence"; (2) "motion for rotation or reassignment of assignment"; (3) "false swearing corrupt sworn statement made without sincer [sic] belief in it [sic] truthfulness[,] perjery [sic]"; and (4) "illegally obtained evidence[,] impeachment[,] wrongful conviction." See (Doc. No. 1 at 5–10). For relief, Sirmons sought an order vacating his convictions. See (Doc. No. 5 at 4).

On July 31, 2026, this Court issued a Memorandum and Order dismissing Sirmons's habeas petition because it was yet another unauthorized second or successive habeas petition. See (Doc. Nos. 6, 7). Sirmons then appealed to the Third Circuit Court of Appeals (Doc. No. 8), and his appeal is currently pending with the Third Circuit. See Docket, Sirmons v. Kistler, No. 26-3081 (3d Cir. filed Aug. 18, 2026).

**5. The Instant Section 2254 Petition**

Sirmons commenced the instant action by filing his Section 2254 petition, his IFP Application, and a prison trust fund account statement, all of which the Clerk of Court docketed on September 8, 2026. (Doc. Nos. 1–3.)[4] Because Sirmons did not submit a certified account

---

[3] Although docketed as a supplement, this submission consists of several pages which were apparently missing from Sirmons's form Section 2254 petition, including, inter alia, the portion of the form petition in which the petitioner explains how their petition is timely. See (Doc. No. 5 at 1–5).

[4] Sirmons did not sign his petition as required by statute and the applicable rules. See 28 U.S.C. § 2242 ("Application for a writ of habeas corpus shall be in writing signed and verified by the person for whose relief it is intended or by someone acting in his behalf."); R. 2(c)(5), 28 U.S.C. foll. § 2254 ("The petition must . . . be signed under penalty of perjury by the petitioner or by a

statement as required by the in forma pauperis statute, see 28 U.S.C. § 1915(a)(2) ("A prisoner seeking to bring a civil action . . . without prepayment of fees or security therefor, . . . shall submit a certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6-month period immediately preceding the filing of the complaint . . ., obtained from the appropriate official of each prison at which the prisoner is or was confined." (emphasis added)), an Administrative Order issued requiring the superintendent or other appropriate official at Sirmons's place of confinement, Pennsylvania State Correctional Institution Camp Hill, to submit Sirmons's certified account statement to the Clerk of Court. (Doc. No. 5.) The Clerk of Court docketed Sirmons's certified account statement on September 30, 2026. (Doc. No. 7.)

In Sirmons's petition, he asserts at least four claims, all of which are difficult to interpret. See (Doc. No. 1 at 4–8). First, he appears to assert that he was wrongfully arrested. See (id. at 4). Second, he appears to argue either that a magisterial district justice improperly continued his preliminary hearing to allow a witness to be subpoenaed to testify during the hearing. See (id. at 5). Third, he appears to contend that the trial judge permitted "fabricat[ed e]vidence" during a January 27, 2015 pretrial proceeding. See (id. at 7). Fourth, and finally, he appears to assert that certain "[d]ata or [r]ecords" were manipulated. See (id. at 8). As for these claims, Sirmons acknowledges that he never raised them (at least on appeal) in the Pennsylvania state courts. See (id. at 3, 5, 6, 8, 9). In addition, Sirmons asserts that he timely filed his petition because "the date on which the factual predicate of [his] claim or claims presented could [not] have been discovered through the exercise of due diligence." See (id. at 11 (cleaned up)).

---

person authorized to sign it for the petitioner under 28 U.S.C. § 2242."); Fed. R. Civ. P. 11(a) ("Every pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name--or by a party personally if the party is unrepresented."). He also fails to identify the relief he seeks in his petition.

## II. LEGAL STANDARDS

### A. Applications for Leave to Proceed in Forma Pauperis

Under the in forma pauperis statute, the Court may allow a plaintiff to commence a civil case "without prepayment of fees or security therefor," if the plaintiff "submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor." See 28 U.S.C. § 1915(a)(1). This statute

> "is designed to ensure that indigent litigants have meaningful access to the federal courts." Neitzke v. Williams, 490 U.S. 319, 324, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Specifically, Congress enacted the statute to ensure that administrative court costs and filing fees, both of which must be paid by everyone else who files a lawsuit, would not prevent indigent persons from pursuing meaningful litigation. [Deutsch v. United States, 67 F.3d 1080, 1084 (3d Cir. 1995)]. Toward this end, § 1915(a) allows a litigant to commence a civil or criminal action in federal court in forma pauperis by filing in good faith an affidavit stating, [inter alia], that [they are] unable to pay the costs of the lawsuit. Neitzke, 490 U.S. at 324, 109 S.Ct. 1827.

See Douris v. Middletown Twp., 293 F. App'x 130, 131–32 (3d Cir. 2008) (unpublished) (footnote omitted).

### B. Screening of Section 2254 Habeas Petitions

District courts are tasked with conducting a preliminary review of Section 2254 habeas petitions. See R. 4, 28 U.S.C. foll. § 2254 ("The clerk must promptly forward the [habeas] petition to a judge under the court's assignment procedure, and the judge must promptly examine it."). When conducting this review, "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner." See id.

### C. Section 2254 Habeas Petitions

A petition for writ of habeas corpus is the exclusive federal remedy for a state prisoner challenging the "very fact or duration" of their confinement and seeking "immediate release or a

speedier release from that imprisonment." See Preiser v. Rodriguez, 411 U.S. 475, 498–99 (1973); Leamer v. Fauver, 288 F.3d 532, 542–44 (3d Cir. 2002). A district court is authorized to "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that [they are] in custody in violation of the Constitution or laws or treaties of the United States." See 28 U.S.C. § 2254(a). Claimed violations of state law standing alone, will not entitle a petitioner to relief, absent a showing that those violations are so great as to be of a constitutional dimension. See Estelle v. McGuire, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). Furthermore, a state prisoner seeking to invoke the power of this Court to issue a writ of habeas corpus must have exhausted the remedies available to them in the courts of the state. See 28 U.S.C. § 2254(b)(1)(A).

## III. DISCUSSION

### A. IFP Application

After reviewing the IFP Application and Sirmons's account statement, it appears that he lacks the financial means to prepay the filing fee in this matter. Therefore, the Court will grant the IFP Application and allow Sirmons to proceed in forma pauperis in this habeas action.

### B. Review of Sirmons's Section 2254 Habeas Petition

After reviewing Sirmons's Section 2254 habeas petition, it plainly appears that this Court lacks subject-matter jurisdiction to consider any of his claims under Section 2254 because his petition is another unauthorized second or successive Section 2254 petition. As indicated above, this Court dismissed his second Section 2254 petition as unexhausted and procedurally defaulted

on August 21, 2019. See Sirmons v. Gilmore, No. 19-cv-00625 (M.D. Pa.), ECF Nos. 4, 5. Approximately a month later, the Court dismissed Sirmons's third Section 2254 petition as an unauthorized second or successive habeas petition. See Sirmons v. Commw. of Pa., No. 19-cv-01502 (M.D. Pa.), ECF Nos. 4, 5. Then, more than a month prior to Sirmons filing the instant Section 2254 petition, the Court dismissed his fourth Section 2254 petition as an unauthorized second or successive habeas petition. See Sirmons v. Kistler, No. 26-cv-01932 (M.D. Pa.), ECF Nos. 6, 7.[5] Therefore, Sirmons's instant Section 2254 petition is subject to the second or successive habeas petition authorization requirements of the Antiterrorism and Effective Death Penalty Act ("AEDPA").

AEDPA provides that a habeas petitioner cannot file a second or successive petition for habeas corpus relief in a district court without first seeking and receiving approval from the appropriate court of appeals. See 28 U.S.C. § 2244(b)(3)(A) ("Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application."); see also Benchoff v. Colleran, 404 F.3d 812, 816 (3d Cir. 2005) ("As a procedural matter, § 2244(b)(3)(A) establishes a 'gatekeeping' mechanism that requires a prospective applicant to 'file in the court of appeals a motion for leave to file a second or successive habeas application in the district court.'" (quoting Felker v. Turpin, 518 U.S. 651, 657 (1996))). If the petitioner fails to first obtain approval from the appropriate court of appeals, a district court lacks subject-matter jurisdiction to consider the second or successive habeas petition. See Burton v. Stewart, 549 U.S. 147, 157 (2007) ("The long and short of it is that [the petitioner] neither sought nor received authorization from the Court of Appeals before filing his . . . 'second or

[5] Sirmons also appealed from this decision prior to filing his Section 2254 petition in this case.

successive' petition challenging his custody, and so the District Court was without jurisdiction to entertain it.").

"Section 2244 . . . does not define what constitutes a 'second or successive' petition." Benchoff, 404 F.3d at 816; see also Christy v. Horn, 115 F.3d 201, 208 (3d Cir. 1997) ("While the AEDPA requires [the procedure of first obtaining authorization from a court of appeals before filing a second or successive application], it does not define what is meant by 'second' or 'successive.'" (alteration to original)). Nonetheless, "'a prisoner's application is not second or successive simply because it follows an earlier federal petition.'" See Benchoff, 404 F.3d at 817 (quoting In re Cain, 137 F.3d 234, 235 (5th Cir. 1998)); see also Stewart v. Martinez-Villareal, 523 U.S. 637, 643 (1998) ("This may have been the second time that respondent had asked the federal courts to provide relief on his Ford claim, but this does not mean that there were two separate applications, the second of which was necessarily subject to §2244(b)."). If, however, "a prisoner has filed a previous habeas petition that was adjudicated on the merits, [they] may not file a second or successive petition in the district courts without first seeking leave from the Court of Appeals." See In re Stitt, 598 F. App'x 810, 811 n.1 (3d Cir. 2015) (unpublished). In addition, the second or successive "doctrine . . . bar[s] claims that could have been raised in an earlier habeas corpus petition" but were not raised by the petitioner. See Benchoff, 404 F.3d at 817 (citations omitted).

After reviewing Sirmons's Section 2254 petition, it plainly appears that it is a second or successive habeas petition insofar as this Court adjudicated Sirmons's second Section 2254 habeas petition on the merits by dismissing it due to Sirmons's procedural default of his claims. See United States v. Fake, 416 F. App'x 134, 136 (3d Cir. 2011) (unpublished) (explaining, in the context of a habeas petition under 28 U.S.C. § 2255, that "[t]he denial of a claim for habeas

relief as procedurally defaulted constitutes a determination on the merits"); Carter v. United States, 150 F.3d 202, 205–06 (2d Cir. 1998) (concluding that "a denial on grounds of procedural default constitutes a disposition on the merits and thus renders a subsequent § 2254 petition or § 2255 motion 'second or successive' for purposes of the AEDPA," and joining other circuit courts reaching the same conclusion); Thomas v. Little, No. 21-cv-02159, 2022 WL 4585835, at *3 (M.D. Pa. Sept. 29, 2022) (determining that denial of original habeas petition because of procedurally defaulted claims constituted decision on merits for purposes of determining whether subsequent petition was second or successive petition under Section 2244(b)). Thus, Sirmons cannot file the instant second or successive Section 2254 petition seeking habeas corpus relief without first seeking and receiving approval from the Third Circuit. See Benchoff, 404 F.3d at 817. Sirmons has neither sought nor obtained an order from the Third Circuit allowing this Court to consider the merits of his habeas claims in this case. Accordingly, this Court does not have subject-matter jurisdiction to consider those claims. See 28 U.S.C. § 2244(b)(3)(A); Robinson v. Johnson, 313 F.3d 128, 139–40 (3d Cir. 2002) (explaining that Section 2244 "limits the authority of the district court to consider second or successive petitions without an order of the court of appeals").

In situations such as those presented here, where "a second or successive habeas petition is erroneously filed in a district court without the permission of a court of appeals, the district court's only option is to dismiss the petition or transfer it to the court of appeals pursuant to 28 U.S.C. § 1631." See Robinson, 313 F.3d at 139; 28 U.S.C. § 1631 ("Whenever a civil action is filed in a court . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action . . . could have been brought at the time it was filed."). When determining whether to transfer a

habeas action to the court of appeals, the district court should "consider whether the petitioner alleges sufficient facts to satisfy the gatekeeping requirement of the relevant habeas provision." See Lee v. Lane, No. 15-cv-02195, 2017 WL 3167410, at *3 (M.D. Pa. June 23, 2017) (citations omitted), report and recommendation adopted, 2017 WL 3158853 (M.D. Pa. July 25, 2017); Hatches v. Schultz, 381 F. App'x 134, 137 (3d Cir. 2010) (unpublished) ("In deciding that it would not be in the interest of justice to transfer the petition to the Fourth Circuit, the District Court properly considered whether Hatches had alleged facts sufficient to bring his petition within the gatekeeping requirement of § 2255 permitting 'second or successive' petitions based upon newly discovered evidence or a new rule of constitutional law." (citation omitted)). The relevant habeas provision in this case is 28 U.S.C. § 2244(b)(2), which provides as follows:

> A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless—
>
> (A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and
>
> (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

See 28 U.S.C. § 2244(b)(2).

Here, Sirmons's habeas challenges do not rely on a "new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." See id. § 2244(b)(2)(A). Sirmons does, however, assert that "the factual predicate" for his challenges could not have been discovered previously through the exercise of due diligence. See

(Doc. No. 1 at 11); see also 28 U.S.C. § 2244(b)(2)(i). Despite this claim, Sirmons does not identify any facts in support of his assertion. See (Doc. No. 1 at 4–8). In other words, he does not specify why he could not previously discover the factual predicate of his claims.

Perhaps more importantly, Sirmons does not describe how any such facts would be sufficient to affect his convictions under the standard set forth in Section 2244(b)(2)(ii). Instead, he appears to merely believe that he was wrongfully convicted. While this Court expresses no opinion about the merits of Sirmons's claims in his petition, see Hatches, 381 F. App'x at 137 ("[T]his inquiry as to the factual predicate of Hatches' claims did not require—and the District Court did not express—any opinion on the merits of the claims."), the Court finds that the interests of justice do not warrant transferring this matter to the Third Circuit. Accordingly, the Court will dismiss Sirmons's petition without prejudice for lack of subject-matter jurisdiction.

**C. Certificate of Appealability**

A court should only issue a certificate of appealability ("COA") if "the applicant has made a substantial showing of the denial of a constitutional right." See 28 U.S.C. § 2253(c)(2). "Where a district court has rejected the constitutional claims on the merits . . . [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). If, however, the district court

> denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

See id. In this case, the Court finds that reasonable jurists would not debate whether the Court was correct in determining that Sirmons's Section 2254 petition is an unauthorized second or

successive habeas petition and, as such, subject to dismissal. Accordingly, the Court will not issue a COA.

## IV. CONCLUSION

For the reasons discussed above, the Court will grant the IFP Application, dismiss without prejudice Sirmons's Section 2254 habeas petition, decline to issue a certificate of appealability, and direct the Clerk of Court to close this case. An appropriate Order follows.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania